STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

Garrett Greene
Senior Litigation Counsel (TX Bar No. 24096217)
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 549-9429
garrett.greene@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF ARIZONA; ARIZONA BOARD OF REGENTS,<br><br>Defendants. | Civil No. ________<br><br>COMPLAINT |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1. Federal law prohibits illegal aliens from being eligible to receive post-secondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet Arizona has ignored this Congressional prohibition since 2022.

2. In December 2022, Arizona passed Proposition 308 ("Prop. 308"), allowing eligible illegal alien students who are living in Arizona to access in-state tuition[1] (codified at Ariz. Rev. Stat. Ann. § 15-1803). Additionally, Prop. 308 repealed a prior statute that made illegal aliens ineligible for state-funded financial aid benefits. *See* Ariz. Rev. Stat. Ann. § 15-1825 (repealed 2022). Thus, Prop. 308 also extends eligibility for in-state tuition benefits at any Arizona public university or community college to illegal aliens, while requiring U.S. citizens from other states to pay higher tuition rates.

3. Prop. 308 constitutes blatant unequal treatment favoring illegal aliens over U.S. citizens. Worse, such preferential treatment is squarely prohibited and preempted by federal law mandating that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Accordingly, under the Supremacy Clause of our Nation's Constitution, Ariz. Rev. Stat. Ann. § 15-1803's extension of eligibility for postsecondary education benefits to illegal aliens is unconstitutional and must yield to federal law.

4. Courts have long recognized 8 U.S.C. § 1623's express preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state

[1] Arizona Board of Regents, *Proposition 308 (Prop. 308) Frequently Asked Questions*, https://perma.cc/KEK5-SZJR (last visited August 19, 2026).

United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

5. Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *See, e.g.*, *United States v. Illinois*, No. 25-CV-1691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States v. Nebraska*, --- F.Supp.3d ---, No. 8:26-CV-172, 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause); *see also United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated 8 U.S.C. § 1621(d) because it was a regulation, not an enacted State law as required by Section 1621(d)). This Court should do the same

## JURISDICTION AND VENUE

6. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345.

7. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district, and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

8. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

## PARTIES

9. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

10. Defendant State of Arizona is a state of the United States.

11. Defendant Arizona Board of Regents ("Board") is the chief policy-making body overseeing postsecondary education at Arizona's three public universities, including the programs at issue in this lawsuit. *See* Ariz. Rev. Stat. Ann. § 15-1626.

## FEDERAL LAW

12. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

13. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully

executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

14. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See*, *e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

15. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

16. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996);

IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

17. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

18. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

19. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

20. Accordingly, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See id.* § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

21. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id*. § 1623(a).

22. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence. On February 19, 2025, President Trump issued Executive Order 14218, Ending Taxpayer Subsidization of Open Borders, ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a).

23. On April 28, 2025, President Trump issued Executive Order 14287, Protecting American Communities From Criminal Aliens, directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. § 5.

24. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

**ARIZONA LAWS AND POLICY**

A. <u>Arizona Makes Illegal Aliens Eligible for Resident Tuition.</u>

25. Arizona law rewards an illegal alien with eligibility for in-state tuition, based on residency within Arizona, while explicitly denying eligibility for resident tuition rates to U.S. citizens who are not Arizona residents. *See* Ariz. Rev. Stat. Ann. § 15-1803 (outlining tuition classification).

26. The Arizona Board of Regents can "adopt, and authorize each university to adopt, regulations, policies, rules or measures as are deemed necessary." Ariz. Rev. Stat. Ann. § 15-1626. The Board "[f]ix[es] tuitions and fees to be charged and differentiate[s] the tuitions and fees between institutions and between residents, nonresidents, undergraduate students, graduate students, [and] students from foreign countries." *Id.* Among other things, the Board also "[p]rescribe[s] qualifications for admission of all students to the universities." *Id.*

27. Arizona, like most states, charges two separate tuition rates at the three Arizona public universities and community colleges: resident and nonresident tuition. *See* Ariz. Rev. Stat. Ann. § 15-1803.

28. For example, Northern Arizona University charges Arizona residents approximately $35,326 in tuition for one academic year, but charges non-Arizona residents approximately $53,326.[2]

29. Similarly, Arizona State University charges Arizona residents approximately $14,814 in tuition for one academic year,[3] but charges non-Arizona residents approximately $39,262[4]

30. Likewise, The University of Arizona charges Arizona residents approximately $13,900 in tuition and fees for one academic year, but charges non-Arizona residents approximately $44,400.[5]

31. The same structure of substantially less-expensive in-state tuition for those

---

[2] Northern Arizona University, *2026-2027 Catalog Year estimated cost of attendance*, https://perma.cc/5Y8S-EKT7 (last visited Aug. 19, 2026).

[3] Arizona State University, *Cost of college and financial aid for a first-year resident student*, https://perma.cc/KNA7-JV2R (last visited Aug. 19, 2026).

[4] Arizona State University, *Cost of college and financial aid for out-of-state first-year students*, https://perma.cc/TZN9-L8L3 (last visited Aug. 19, 2026).

[5] The University of Arizona, Estimating Your Co19st of Attendance, https://perma.cc/T6P8-UHEW (last visited Aug. 19, 2026).

classified as Arizona residents as compared to non-Arizona residents holds across community colleges in Arizona as well. *See* Ariz. Rev. Stat. Ann. § 15-1803.

32. Since 2022, Prop. 308 has rewarded illegal aliens with eligibility for these in-state tuition benefits in Arizona while denying that same benefit to U.S. citizens who are not residents of Arizona. *See* Ariz. Prop. 308, 55th Leg., 1st Reg. Sess. (Ariz. 2021) (codified at Ariz. Rev. Stat. Ann. § 15-1803).

33. Section 15-1803 unequivocally makes illegal aliens living in Arizona eligible to receive resident tuition in Arizona:

> B. Notwithstanding any other law, a student, other than a nonimmigrant alien as described in 8 United States Code section 1101(a)(15), who meets both of the following requirements is eligible for in-state tuition at any university under the jurisdiction of the Arizona board of regents or at any community college as defined in section 15-1401:
>
> 1. Attended any public or private high school option or homeschool equivalent pursuant to section 15-802 while physically present in this state for at least two years.
>
> 2. Graduated from any public or private high school option or homeschool equivalent pursuant to section 15-802 while physically present in this state or obtained a high school equivalency diploma in this state.
>
> C. Persons without lawful immigration status are eligible for in-state tuition pursuant to subsection B of this section.

Ariz. Rev. Stat. Ann. § 15-1803.

34. If a student applying to an Arizona university, either public or a community college, meets the criteria in Section 15-1803 (attending and graduating from a public or private high school, or homeschool equivalent, while being physically present in the state for at least two years) he or she "eligible for in-state tuition." Ariz. Rev. Stat. Ann. § 15-1803.

35. Nothing in Section 15-1803 requires lawful presence in the United States for in-state eligibility. In fact, part C of Section 15-1803 states "[p]ersons *without* lawful immigration status

are eligible for in-state tuition." Ariz. Rev. Stat. Ann. § 15-1803 (emphasis added). Additionally, a student's high school attendance for two or more years within the State is a near-perfect proxy for residence given that to enroll a child in a public school in Arizona, the school district "shall require and maintain verifiable documentation of residency in this state for pupils who enroll in the school district or charter school." Ariz. Rev. Stat. Ann. § 15-802(B). *See also id.* § 15-821(A).

36. Accordingly, the tuition rate for illegal aliens in Arizona who satisfy Section 15-1803's criteria is the same tuition rate as other Arizona residents. Conversely, a U.S. citizen that is not eligible for in-state tuition under Section 15-1803, due to residency requirements, is required to pay higher, nonresident tuition.

37. The economic harms that come from laws like Section 15-803 are staggering. For the Fall 2025 semester, at least 720 illegal aliens received in-state tuition at Arizona public universities and colleges, including 432 at Arizona State University. Molly Bohannon, *Arizona Voters Approved In-State Tuition for Undocumented Students. The State Left Implementation to Chance*, ARIZ. CTR. FOR INVESTIGATIVE REPORTING (Jan. 7, 2026), https://azcir.org/news/2026/01/07/implementation-hinders-prop308-undocumented-student-tuition-equity/ (last visited Aug. 26, 2026). Given the approximately $24,000[6] difference in resident versus out-of-state tuition rates at Arizona State University, illegal aliens received close to $10.5M in reduced tuition at that university alone last year.

38. More than that, "national experts estimate[] that more than 3,600 undocumented students a year could qualify for in-state tuition under" Prop. 308 in the years to come. *Id*. This is coupled with the fact that "Arizona [has] no centralized system in place to oversee its rollout, track participation or ensure consistent implementation across colleges and universities." *Id.*

[6] *See* notes 3–4, *supra*.

B. Arizona Makes Illegal Aliens Eligible for Financial Assistance Based on Residence.

39. Arizona community colleges are organized into districts (ten established and two provisional), with each district governed by a local district board. District boards set tuition, policy, and administration for the college(s) within their district. *See* Ariz. Rev. Stat. Ann. §§ 15-1401–1402.

40. The Maricopa County Community College District ("MCCCD"), which operates ten community colleges, expressly makes undocumented aliens eligible for financial assistance under Proposition 308. MCCCD's financial-assistance policy states that, although only persons lawfully present in the United States may qualify for federal financial aid, "[u]nder Arizona state law, undocumented students may qualify for [MCCCD] scholarships if they meet the terms outlined under Proposition 308." Maricopa County Community College District, *Student Financial Assistance*, Admin. Reg. S-5, https://district.maricopa.edu/administrative-regulations/appendices/2-students/s-5 (last visited Aug. 25, 2026).

41. MCCCD likewise informs students that Proposition 308 permits eligible noncitizens to receive financial aid funded "in whole, or in part, with state monies." Maricopa County Community College District, *Proposition 308*, https://www.maricopa.edu/prop-308 (last visited Aug. 25, 2026). And MCCCD classifies students for tuition purposes as either "Prop 308 eligible or in-state," "out-of-country," or "out -of-state," applying the eligibility criteria in Section 15-803. Maricopa County Community College District, *Tuition Classification*, Admin. Reg. 2.2.2, https://district.maricopa.edu/regulations/admin-regs/section-2/2-2 (last visited Aug. 25, 2026).

42. Pima Community College ("PCC"), in Pima County Community College District, allows undocumented immigrants to access state financial aid.

43. PCC offers the Summer Tuition Award to students who meet GPA requirements and

who are classified as Arizona residents.[7] The information sheet further clarifies that "Students meeting Prop 308 are eligible."[8]

44. PCC also offers the Pima Merit Tuition Award[9] and the Pima Excellence Tuition Award[10] if applicants are "[c]lassified as an Arizona resident at PCC for purposes of lawful presence," among other criteria.

45. To determine if a student classifies as an Arizona resident, PCC uses the criteria in Section 15-1803.[11]

46. Thus, through Section 15-1803, illegal aliens residing in Arizona are eligible for scholarships so long as they satisfy Arizona's residence-based eligibility criteria, while U.S. citizens residing outside Arizona are not eligible.

**CLAIMS FOR RELIEF**
**COUNT I**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF ARIZ. REV. STAT. ANN. §15-1803 - TUITION)**

47. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

48. The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

---

[7] Pima Community College, *Terms and Conditions 2025-2026 Summer Tuition Award*, https://perma.cc/A3NL-2MCH (last visited Aug. 19, 2026).
[8] *Id.*
[9] Pima Community College, *Terms and Conditions 2026-2027 Pima Merit Tuition Award*, https://perma.cc/A2MK-ZK84 (last visited Aug. 19, 2026).
[10] Pima Community College, *Terms and Conditions 2026-2027 Pima Excellence Tuition Award*, https://perma.cc/A3NL-2MCH (last visited Aug. 19, 2026).
[11] Pima Community College, *Residency Requirements*, https://perma.cc/GBC8-VCQ5 (last visited Aug. 19, 2026).

49. The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

50. Section 15-1803 extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

51. Accordingly, the challenged provision, Ariz. Rev. Stat. Ann. § 15-1803, is preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF ARIZ. REV. STAT. ANN. §15-1803 – FINANCIAL AID)**

52. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

53. Section 15-1803 extends eligibility for in-state financial aid benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

54. Accordingly, the challenged provision, Ariz. Rev. Stat. Ann. § 15-1803, is preempted and unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

55. That this Court enters a judgment declaring Ariz. Rev. Stat. Ann. § 15-1803 violates the Supremacy Clause because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens through State law and is therefore unconstitutional and preempted.

56. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Ariz. Rev. Stat. Ann. § 15-1803, or any similar subsequent statute, because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens through State law;

57. That this Court award the United States its costs and fees in this action; and

58. That this Court award any other relief it deems just and proper.

DATED this 27th day of August, 2026.

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

*<u>/s/ Garrett Greene</u>*
Senior Litigation Counsel (TX Bar No. 24096217)
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 549-9429
garrett.greene@usdoj.gov

*Attorneys for the United States of America*