**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Joshua D. Bendor (No. 031908)
Hayleigh S. Crawford (No. 032326)
Nathan T. Arrowsmith (No. 031165)
Joshua G. Nomkin (No. 039213)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Hayleigh.Crawford@azag.gov
Nathan.Arrowsmith@azag.gov
Joshua.Nomkin@azag.gov
ACL@azag.gov

*Attorneys for Defendants State of Arizona and Arizona Board of Regents*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>State of Arizona; Arizona Board of Regents,<br><br>Defendants. | No. 2:26-cv-06101-GMS<br><br>**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>(Oral argument requested)<br><br>(Hon. G. Murray Snow) |

Providing postsecondary education and protecting the will of the voters are core to Arizona's sovereignty. Arizona's Constitution mandates "a general and uniform public school system," including "[u]niversities," Ariz. Const. art. XI, § 1(A), and its People retain a protected legislative power, *id.* art. IV, pt. 1, § 1(3), (6)(C).

Exercising those aspects of State sovereignty, the People adopted Proposition 308 (2022), allowing students who had attended and graduated from an Arizona high school or homeschool equivalent to obtain in-state tuition at Arizona's universities and community colleges, regardless of residence or lawful immigration status.

Through this litigation, the Government seeks to invade Arizona's provision of postsecondary education under the cover of Congress's power over immigration. It asserts that a federal statute, 8 U.S.C. § 1623, expressly preempts Arizona's generally applicable law. But the fundamental flaws in the Government's Complaint expose its allegations as overreach. It lacks standing, cannot show that § 1623 preempts Arizona law, and attempts to extend Congress's power over immigration beyond federal constitutional constraints. The Complaint cannot overcome these defects and should be dismissed under Rules 12(b)(1) and (6).

## BACKGROUND

### I. In 1996, Congress enacted 8 U.S.C. § 1623(a), purporting to direct States how to set postsecondary education benefits.

Congress adopted 8 U.S.C. § 1623 as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") on September 30, 1996. *See* Pub. L. No. 104-208, Div. C, 110 Stat. 3009 (1996). That provision purports to limit eligibility for higher education benefits on the basis of State residence for noncitizens not lawfully present. Section 1623(a) provides:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

As used there, "residence" is "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33); *see also id.* § 1641(a) (incorporating that definition).[1]

IIRIRA contains no purpose statement. But an earlier enactment from that year, the Personal Responsibility and Work Opportunity Reconciliation Act, provides that "aliens within the Nation's borders [should] not depend on public resources to meet their needs," and "the availability of public benefits [should] not constitute an incentive for immigration to the United States." 8 U.S.C. § 1601(2)(A)-(B). Thus, under 8 U.S.C. § 1621, noncitizens without lawful immigration status are not eligible for, among other things, "any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided … by an agency of a State or local government or by appropriated funds of a State or local government." *Id.* § 1621(a), (c)(1)(B). But recognizing the States' inherent interests and powers in assisting persons within their borders, the statute also provides a release valve: under subsection (d), "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under subsection (a) only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility."

## II. In 2022, Arizona voters adopted Proposition 308, expanding eligibility for in-state tuition.

In 2022, Arizona voters enacted a "Measure Relating to the Classification of Students for Tuition Purposes." *See* S.C.R. 1044, 2021 Ariz. Sess. Laws (1st Reg. Sess.). Prop. 308 added a pathway for students to get in-state tuition if they met attendance and graduation requirements, regardless of residence and lawful immigration status.

Before and after Prop. 308, students have had other pathways to in-state tuition, including through domicile, being a member of the armed forces stationed in Arizona or

---

[1] This Motion uses "citizen" to refer to "citizen or national of the United States."

their immediate family, through membership in an Indian tribe with reservation land within Arizona and another state, through participation in a reserve officer training corps program in Arizona, and through participation in an AmeriCorps program in Arizona. *See generally* A.R.S. § 15-1802.

Prop. 308 amended A.R.S. § 15-1803 to provide an additional path for students to pay in-state tuition. Specifically, § 15-1803(B) (the "Eligibility Clause") provides:

> Notwithstanding any other law, a student, other than a nonimmigrant alien as described in [8 U.S.C. § 1101(a)(15)], who meets both of the following requirements is eligible for in-state tuition at any university under the jurisdiction of the Arizona board of regents or at any community college …
>
> (1) Attended any public or private high school option or homeschool equivalent pursuant to § 15-802 while physically present in this state for at least two years.
>
> (2) Graduated from any public or private high school option or homeschool equivalent pursuant to § 15-802 while physically present in this state or obtained a high school equivalency diploma in this state.

The Eligibility Clause applies universally to any student who meets those two requirements. Meanwhile, § 15-1803(C)—the "Status Clause"—clarifies that "[p]ersons without lawful immigration status are eligible for in-state tuition pursuant to subsection B of this section." A.R.S. § 15-1803(C).

Prop. 308 also amended existing Arizona law to remove "postsecondary education" from a list of benefits requiring documents "demonstrating lawful presence in the United States." A.R.S. § 1-502(A), (I). And it repealed § 15-1825 and former § 15-1803(B), which prohibited students without lawful immigration status from being "entitled to" in-state tuition and certain "financial assistance that is subsidized or paid in whole or in part with state monies." A.R.S. §§ 15-1803, 15-1825(A) (2006).

### III. In 2026, the United States sued Arizona over its voter-enacted law.

For the past four years, Arizona has applied and enforced Prop. 308 without issue. But on August 27, 2026, the United States sued the State and the Arizona Board of Regents over § 15-1803. The Complaint's two counts assert Supremacy Clause violations

based on 8 U.S.C. § 1623. Count I alleges that the Eligibility Clause violates § 1623 because it "extends eligibility for in-state tuition benefits to illegal aliens … based on residency … that are not available to all U.S. citizens regardless of residency." Compl. ¶ 50. Count II alleges the same, but for "in-state financial aid benefits." Compl. ¶ 53.

## LEGAL STANDARD

The Court should grant a motion to dismiss under Rule 12(b)(1) when the plaintiff lacks standing, *see Wright v. SEIU Local 503*, 48 F.4th 1112, 1117 n.1 (9th Cir. 2022), and under Rule 12(b)(6) when the complaint fails to state a claim that is "plausible on its face," *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation omitted).

## ARGUMENT

The Government lacks standing because it alleges no concrete and particularized harm from Arizona's law. Nor can it state a preemption claim because § 1623(a) does not expressly preempt Arizona's law. And even if § 1623 is read to encompass Arizona's law, it cannot be applied to override Prop. 308 because § 1623(a) exceeds Congress's Article I authority and violates constitutional anti-commandeering principles.

### I. The Government lacks standing because it has not pleaded an injury.

As a threshold matter, the Government lacks standing. To have standing, the Government must show that it suffered an injury in fact (1) that is concrete, particularized, and actual or imminent; (2) fairly traceable to defendants; and (3) redressable by judicial relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Article III jurisdiction is "not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (citation omitted). Thus, like any other litigant, the Government must show that it "suffered a concrete harm. No concrete harm, no standing." *Id.* at 417.

The Complaint nowhere alleges that the Eligibility Clause injures the United States. Indeed, the word "injury" does not appear in the Complaint at all. Instead, the Government points to alleged economic harm suffered by Arizona universities. Compl. ¶ 37 (asserting that "illegal aliens received close to $10.5M in reduced tuition at [Arizona

State University] alone last year").[2] But any alleged economic harm from reduced tuition payments to state universities accrues to *Arizona* and its institutions, not the United States.

Nor does the Complaint allege a sovereign injury to the Government's immigration or foreign relations powers. *See* Compl. ¶¶ 14-15. For standing on this basis, the Government must show concrete and particularized injury to its "power to create and enforce a legal code" or to "demand for recognition from other sovereigns." *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982) (describing valid sovereign interests for standing purposes). For example, in *Sanitary District of Chicago v. United States*, 266 U.S. 405, 425 (1925), the United States had standing to sue a state corporation for diverting navigable waters where that diversion threatened its control over navigable waters bordering other states and Canada, given its sovereign power to regulate interstate commerce and to carry out its treaty obligations to Canada.

Here, by contrast, the Complaint does not allege any particular interference with the Government's ability to enforce its laws against regulated parties or disruption to foreign relations. The Complaint describes 8 U.S.C. § 1623(a) as an exercise of the Government's "inherent, well-established, preeminent, and preemptive authority to regulate immigration matters" and "to control and conduct relations with foreign nations." Compl. ¶¶ 14-15. But it does not allege that Arizona's law has interfered with those powers in any way. *Cf. Sanitary Dist.*, 266 U.S. at 425 (treaty gave United States and Canada authority over uses "affecting the natural level or flow of boundary waters" and thus United States could sue a state actor diverting such waters).

---

[2] The Government misstates the reported amount of funds at issue, asserting that "[f]or the Fall 2025 semester, at least 720 illegal aliens received in-state tuition … including 432 at Arizona State University." Compl. ¶ 37. The cited report instead estimated that "about 720 students had received in-state tuition" under Prop. 308 "as of the fall 2025 semester," i.e., between spring 2023 and fall 2025. *See* Molly Bohannon, *Arizona Voters Approved In-State Tuition for Undocumented Students. The State Left Implementation to Chance*, Ariz. Ctr. for Investigative Reporting (Jan. 7, 2026), *available at* https://azcir.org/news/2026/01/07/implementation-hinders-prop308-undocumented-student-tuition-equity/.

Instead, the Government only asserts that federal law preempts a state law, which is not a standalone sovereign injury. *See United States v. California*, 824 F. Supp. 3d 1079, 1083 (C.D. Cal. 2026) (rejecting that "the mere *existence* of a preempted state law creates a sovereign injury to the federal government"). The Supremacy Clause "creates a rule of decision," but it "is not the 'source of any federal rights.'" *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (citation omitted). Thus, the mere existence of an allegedly preempted law, without any allegation of concrete harm from its enforcement, does not provide injury in fact. *California*, 824 F. Supp. 3d at 1083; *accord United States v. City of Boston*, 833 F. Supp. 3d 30, 45 (D. Mass. 2026) (concluding U.S. lacked injury in fact based on mere "existence of an allegedly preempted local ordinance (separate from any concrete harm from the ordinance's enforcement)").

That is the case here. The Complaint alleges the mere existence of A.R.S. § 15-1803 as an injury, without any accompanying allegations of harm resulting from its implementation. It does not, for instance, allege that offering postsecondary education benefits interferes with immigration enforcement. *Cf. Geo Grp. v. Newsom*, 50 F.4th 745, 753-54 (9th Cir. 2022) (en banc) (holding federal government had standing where allegedly preempted state law would cause "profound disruptions" to immigration enforcement activities); *United States v. King County*, 122 F.4th 740, 750 (9th Cir. 2024) (holding United States had standing where allegedly preempted local executive order would interfere with Immigration and Customs Enforcement charter flights and thus "affects the United States in a particularized, individual way"). Thus, there is no Article III injury.

**II. Section 1623 does not expressly preempt A.R.S. § 15-1803.**

Even if the Government had standing, 8 U.S.C. § 1623(a) does not expressly preempt § 15-1803 because Arizona's law uses non-residence criteria and treats unlawfully present noncitizens and citizens equally, consistent with 8 U.S.C. § 1623(a). The Supremacy Clause makes federal law "the supreme Law of the Land," U.S. Const. art. VI, cl. 2, so "when federal and state law conflict, federal law prevails and state law is

preempted," *Knox v. Brnovich*, 907 F.3d 1167, 1173 (9th Cir. 2018) (citation omitted). In express preemption cases like this one, *see* Compl. ¶ 4, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent," *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (citation omitted).

On its face, § 1623 preempts only laws that make noncitizens who are not lawfully present eligible for a postsecondary education benefit based on residence, and even then, only if the State treats citizen non-residents unequally. The Eligibility Clause does not do that; it uses non-residence-based criteria and treats non-Arizona residents equally.

**A. The Eligibility Clause uses non-residence criteria.**

Section 1623(a) prohibits States from making noncitizens who are not lawfully present eligible for postsecondary education benefits "on the basis of residence within a State" unless certain conditions are met. Under § 1623, "residence" is "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33); *see also id.* § 1641(a) (incorporating that definition). "On the basis of" means "but-for" causation. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019) ("'[O]n the basis of disability' indicates but-for causation."); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013) (explaining that "because of," "by reason of," "on account of," and "based on" all indicate a but-for causal relationship). Thus, as courts have recently held, § 1623(a) preempts only state laws that "provide[ ] postsecondary education benefits to unlawful noncitizens because their principal, actual dwelling place is within the State." *United States v. Walz*, 825 F. Supp. 3d 897, 909 (D. Minn. 2026), *appeal filed*, No. 26-1886 (8th Cir.); *accord Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855, 860 (Cal. 2010); *United States v. Virginia*, No. 3:25-cv-1067, 2026 WL 2984988, at *9 (E.D. Va. Oct. 5, 2026).

The Eligibility Clause does not make students eligible for in-state tuition based on residence. Instead, a student must have "[a]ttended any public or private high school option or homeschool equivalent … while physically present in this state for at least two

years" and have graduated "while physically present in this state." A.R.S. § 15-1803(B). Those requirements do not mention a student's "principal, actual dwelling place," let alone make that factor determinative of eligibility.

At least three courts have held that statutes providing in-state tuition based on attendance and graduation are not residence-based and thus not preempted by § 1623. Years before Prop. 308's enactment, the California Supreme Court upheld a California statute that made students "exempt from paying nonresident tuition" upon showing, among other criteria, "(1) High school attendance in California for three or more years," and "(2) Graduation from a California high school or attainment of the equivalent thereof," even if they did not have lawful immigration status. *Martinez*, 241 P.3d at 861 (quoting Cal. Educ. Code § 68130.5). The court rejected a § 1623 preemption challenge to the statute, concluding it was based on non-residence criteria because the graduation and attendance requirements allowed nonresidents to qualify, while not all residents would. *Id.* at 860, 864. Federal courts in Minnesota and Virginia have similarly rejected recent lawsuits by the United States regarding statutes that condition eligibility for in-state tuition on high school attendance and graduation. *See Walz*, 825 F. Supp. 3d at 911 (holding that § 1623 does not preempt Minnesota Resident Tuition Statute determining tuition-rate eligibility through high school attendance and graduation); *Virginia*, 2026 WL 2984988, at *2-3, *11 (same for eligibility based on high school attendance and graduation and filing tax returns).

As in those cases, the Eligibility Clause's high school attendance and graduation requirements are not "based on" residence as § 1623(a) expressly requires for preemption. Of course, many people who meet the Eligibility Clause's requirements will *also* be residents, but not all residents will meet the requirements. For example, a student may move to Arizona in her final year of high school. Even after graduating, she would never be eligible for in-state tuition under the Eligibility Clause. And an Arizonan who "attends boarding school or private high school in another state for all four years of high school" would not qualify. *Virginia*, 2026 WL 2984988, at *9.

Conversely, non-residents can be eligible for in-state tuition under the Eligibility Clause despite having residence elsewhere. Arizona statutes provide for several circumstances in which nonresident students may attend Arizona public schools. Those students could meet the Eligibility Clause's attendance and graduation requirements without being Arizona residents, and they demonstrate that "there is no but-for causation" between the challenged law and Arizona residency because the alleged benefits do not "depend[ ] on residency." *Walz*, 825 F. Supp. 3d at 909.

For example, a student crossing daily into Arizona from a different state to attend school would retain her home-state residence but could qualify for Arizona in-state tuition by attending and graduating from an Arizona high school. That may occur if the student pays a reasonable tuition or is a member of an Indian tribe whose land is located both in Arizona and another state. *See* A.R.S. § 15-823(A), (H). Likewise, a student who attended and graduated from an Arizona boarding school or private high school could qualify for in-state tuition under § 15-1803 but would not be an Arizona resident if her parents lived in another state. *See id.* § 15-1802(C) ("The domicile of an unemancipated person is that of the person's parent."). Arizona would not require those students to abandon other-state residence to pay in-state tuition.

Nor does the Eligibility Clause require students to regain residence once lost. A student could attend and graduate from an Arizona high school and then move. Even after yearslong residence in another state, the Eligibility Clause would grant in-state tuition without requiring the student to relinquish other-state residence. Consequently, Arizona's law "cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify for it." *Martinez*, 241 P.3d at 864; *accord Walz*, 825 F. Supp. 3d at 909-10 (same); *Virginia*, 2026 WL 2984988, at *9 (similar).

The Government's contrary arguments fail. The Government attacks the Eligibility Clause primarily by equating physical presence in Arizona with Arizona residence, alleging (at ¶ 35) that A.R.S. § 15-1803 "is a near perfect proxy for residence." That unsupported theory essentially concedes that § 15-1803 is based on other criteria.

The two statutes that the Government cites for the proxy theory, A.R.S. §§ 15-802(B) and 15-821(A), describe admission and compulsory attendance for elementary, middle, and high school students, but they do not condition attendance or graduation on Arizona residence. Rather, Title 15 describes admission of non-resident students, allowing non-residents to meet the Eligibility Clause's attendance and graduation requirements. *See, e.g.*, A.R.S. §§ 15-823(A), (B), (C), (D), (E), (G), (I), (O), 15-823.01(A) (permitting non-resident attendance at Arizona high schools, for instance, if placement with a family member is in the student's best interests). Arizona residence is *sufficient* to attend a public high school, but it is not *necessary* to do so.

Moreover, the Eligibility Clause also allows in-state tuition for students who attended a "private high school option or homeschool equivalent" and graduated while physically present in this state. *See* A.R.S. § 15-1803(B). The Complaint nowhere asserts that only Arizona residents may attend private high school or a homeschool equivalent.

Finally, the Government's citation to recent judgments enforcing § 1623 against the States are inapposite because those judgments dealt with state laws that explicitly tied in-state tuition to "residence" or "domicile." For example, the basis of the Southern District of Illinois's decision was that "[w]hen a state law ties postsecondary education benefits to high-school attendance or graduation in the state *together with residence-related requirements* (such as living with a parent or guardian in the state or residing in the state while attending high school), the benefit is still granted 'on the basis of residence' for purposes of § 1623(a)." *United States v. Illinois,* No. 25-cv-1691-DWD, 2026 WL 2137256, at *9-10 (S.D. Ill. July 24, 2026) (emphasis added). And the state laws at issue in Texas, Nebraska, and Oklahoma likewise imposed residence-related requirements. *See United States v. Texas*, 181 F.4th 548, 555-57 (5th Cir. 2026) (describing "the continuous-residence requirement" as "'the basis' for the provision of postsecondary benefits"); *United States v. Nebraska*, 835 F. Supp. 3d 962, 994-955 (D. Neb. 2026) (addressing statute that required a student to have "[r]esided in this state for at least three years before the date the student graduated from high school" or have "established a home in Nebraska

… with the bona fide intention to make this state his or her permanent residence"); *United States v. Oklahoma*, No. 25-cv-265-RAW-DES, 2025 WL 2815662, at *1 (E.D. Okla. Aug. 7, 2025) (addressing statute requiring students to have "[r]esided in this state with a parent or legal guardian while attending classes"), *report and recommendation adopted*, 2025 WL 2815660 (E.D. Okla. Aug. 29, 2025).[3]

Unlike those state laws, Arizona's Eligibility Clause "lacks an express residency-deeming provision," so they are "largely irrelevant to the issue before the Court." *United States v. Kansas*, No. 5:26-cv-04066-HLT-BGS, 2026 WL 2654069, at *6 (D. Kan. Sept. 9, 2026) (declining to follow cases like *Walz*, involving statutes with non-residency qualifications, when ruling on a statute that contains an express residency provision).

In short, the Eligibility Clause is not residence-based and thus not preempted.

**B. The Eligibility Clause applies equally to U.S. citizens and noncitizens who are not lawfully present.**

Even if attendance and graduation somehow equated to residence, § 1623 does not preempt the Eligibility Clause for another reason: Section 1623's title explains that the statute is a "[l]imitation on eligibility for preferential treatment," and Arizona treats students equally, regardless of lawful immigration status or U.S. citizenship.

Under § 1623's "unless" clause, States making "a citizen or national of the United States" eligible for the postsecondary education benefit "without regard to whether the citizen or national is such a [State] resident" may also make a noncitizen who is "not lawfully present" eligible for the same benefit. The condition is therefore satisfied "if nonresident citizens are eligible for in-state tuition in the same amount, duration, and scope." *Virginia*, 2026 WL 2984988, at *12 (citing *Walz*, 825 F. Supp. 3d at 911-12).

Just as Virginia's and Minnesota's attendance and graduation statutes making in-state tuition available to non-resident U.S. citizens satisfied this condition, so too with Arizona's statute. *See id.* at *13 (describing "Tuition Equity Pathway"); *Walz*, 825 F.

---

[3] The judgments in Kansas, Nebraska, Oklahoma, and Texas were the product of collusive agreements between friendly parties.

Supp. 3d at 912 (describing ways that non-residents could satisfy attendance and graduation requirements). Under the Eligibility Clause, out-of-state residents are equally eligible for in-state tuition. They can qualify, for example, by living in another state and coming into Arizona to attend and graduate from a public high school, by attending an Arizona boarding school or private school while maintaining residence elsewhere, or by moving away after high school graduation and returning to Arizona for higher education after having established residence elsewhere. *See Walz*, 825 F. Supp. 3d at 912 (highlighting similar points). The fact that fewer non-residents may use that pathway does not change that Arizona's law makes it equally available to them. Thus, Arizona satisfies § 1623's condition that "undocumented students are not treated better than United States citizens from other states." *Virginia*, 2026 WL 2984988, at *13.

Rather than engage with the statute's text, the Government contends (at ¶ 22) that Arizona must make in-state tuition available to "all American citizens, regardless of their state of residence." *See also, e.g.*, Compl. ¶¶ 20, 25, 46 (similar). But § 1623 is not so overbroad. It describes a prohibition "unless *a* citizen or national of the United States *is* eligible … without regard to whether *the* citizen or national *is* such a resident." (emphases added). Here, "the use of 'a' in § 1623 means 'one' or 'any.'" *Walz*, 825 F. Supp. 3d at 911; *see also Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021) ("The Dictionary Act does not transform every use of the singular 'a' into the plural 'several.'"). In other words, "[i]f some undocumented students are eligible for in-state tuition, some United States citizens must also be eligible to receive in-state tuition. The point is that undocumented students not be treated better than citizens who are not residents of the state." *Virginia*, 2026 WL 2984988, at *11. The Eligibility Clause satisfies this requirement because noncitizens who are not lawfully present and non-resident citizens qualify for it.

Moreover, the Government's position is "contrary to common sense" because it would eviscerate § 1623's conditionality. *Whiting*, 563 U.S. at 597. Under the Government's read, Arizona's benefits cannot be "denied to American citizens from other states." Compl. ¶ 20. That supposed requirement would entail granting in-state tuition to

all U.S. citizens, meaning a tuition price would not be a "postsecondary education benefit." It would simply be the price of tuition, period. "[I]f Congress intended § 1623 to include all non-residents, it would have used 'all.'" *Walz*, 825 F. Supp. 3d at 912.

**III. The Complaint fails to state a claim because § 1623 exceeds Congress's powers and violates the anticommandeering doctrine as applied to Arizona.**

Alternatively, the Court should dismiss the Complaint because § 1623 cannot be constitutionally applied to invade Arizona's sovereign power over its own postsecondary education institutions.

The Complaint asserts only preemption claims under the Supremacy Clause. For § 1623 to have preemptive effect, it must (1) "represent the exercise of a power conferred on Congress by the Constitution" and (2) "be best read" to "regulate[ ] private actors." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018). Because the Government's theory fails both aspects, § 1623 cannot preempt § 15-1803.

**A. Congress lacks authority to interfere with state education in this manner.**

The Government's attempted application of § 1623 fails the first prong by seeking to extend that statute beyond "the limits on federal power." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012).

In our dual sovereign governmental structure, the States retain all legislative power not specifically enumerated to Congress. *See Murphy*, 584 U.S. at 471. Congress's enumerated powers include the authority to "establish an uniform Rule of Naturalization" and to "regulate Commerce with foreign Nations." Compl. ¶¶ 12, 14 (citing U.S. Const. art. I, § 8, cl. 3, 4). Congress thus has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

But the regulation of education remains a core State prerogative. Indeed, "education is perhaps the most important function of state and local governments." *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954). As the U.S. Supreme Court has recognized, "a State has a legitimate interest in protecting and preserving the quality of [their] colleges and universities and the right[s] of [their] own bona fide residents to attend such

institutions on a preferential tuition basis." *Vlandis v. Kline*, 412 U.S. 441, 452-53 (1973). This is particularly so in Arizona, given its constitutional commitment to providing a "general and uniform public school system" that includes universities and other postsecondary education. Ariz. Const. art. XI, § 1.

Against this backdrop, the Government argues that § 1623(a) exercises Congress's immigration authority—specifically, its power to "encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration." *See* Compl. ¶ 16. That claimed authority for § 1623 is rooted in the power to deny admission to noncitizens who would become public charges if admitted. *See City & Cnty. of S.F. v. USCIS*, 981 F.3d 742, 756-58 (9th Cir. 2020) (describing evolution of public charge status). But the Government fails to allege how § 1623 is connected with that principle in any way.

Here, the Government seeks to apply § 1623 to preferential tuition rates and financial aid, which are state education policies intended to *promote* self-sufficiency through educational attainment and training.[4] The Government itself concedes (at ¶ 3) that § 1623 is about "preferential treatment," meaning it seeks to ensure citizens are treated equally, not enforce self-sufficiency. If anything, § 1623 imposes a rule that States provide citizens *more* benefits. That cannot be squared with alleged concerns about immigrant self-sufficiency.

Nor can § 1623(a) be justified as a regulation of immigration more generally. The Government's immigration authority "is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *DeCanas v. Bica*, 424 U.S. 351, 355 (1976). But the Government does not seek to apply § 1623 for "governance of immigration and alien status" or a specification of "which aliens may be removed from the United States and the procedures for doing so." *Arizona*, 567 U.S. at 395-96. Nor does it seek to impose a rule related to admission

---

[4] It is hard to see how in-state tuition *payments* from students to universities detracts from the asserted principle of self-sufficiency. *See* Compl. ¶¶ 27-31.

of individuals who might become public charges "dependen[t] on public assistance for survival." *City & Cnty. of S.F.*, 981 F.3d at 756.

Instead, the Government attempts to use § 1623 to curtail a state law "that has no connection with immigration law." *Kansas v. Garcia*, 589 U.S. 191, 209 (2020) (describing employment fraud). Arizona's method for choosing who pays in-state tuition is irrelevant to federal immigration law because "illegal entry into the country would not, under traditional criteria, bar" the type of residence-based determinations that the Government alleges Arizona has made. *See Plyler v. Doe*, 457 U.S. 202, 227 n.22 (1982); *see also St. Joseph's Hosp. & Med. Ctr. v. Maricopa County*, 142 Ariz. 94, 100 (1984) (observing that immigration status is not determinative of residence under state law).

To be sure, there is "no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy," when, for instance, it interferes with "agreements to settle claims of American nationals against foreign governments," *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413, 415 (2003), or when state law requires "minute inquiries concerning the actual administration of foreign law," *Zschernig v. Miller*, 389 U.S. 429, 435 (1968). For example, *Toll v. Moreno* prohibited a State's "discriminatory tuition charges and fees *solely* on account of the federal immigration classification" that Congress did not contemplate. 458 U.S. 1, 17 (1982) (emphasis added). But here, there is no conflict between Arizona's classification of who pays in-state tuition and any federal immigration classification. Nor is there any suggestion that the Eligibility Clause conflicts with a treaty obligation, *cf. Garamendi*, 539 U.S. at 413, 415, or some other matter "concerning the actual administration of foreign law," *cf. Zschernig*, 389 U.S. at 435.

At bottom, not "every state enactment which in any way deals with aliens is a regulation of immigration." *DeCanas*, 424 U.S. at 355; *see also, e.g.*, *Garcia*, 589 U.S. at 209 (reasoning that a state law criminalizing "using another person's Social Security number on tax forms threatens harm that has *no connection with immigration law*" (emphasis added)). Furthermore, the Government's theory underlying § 1623 has no

limiting principle. It could require States to remove any supposed "incentive" for immigration, no matter how far removed from Congress's powers. It would be absurd to think, for instance, that public water fountains incentivized immigration in a way that conflicted with federal immigration law. But that is what results under the Government's theory that any generally available benefit is fair game for congressional limitation. For all of these reasons, the Government's application of § 1623 to A.R.S. § 15-1803 exceeds the limits on Congress's power and thus cannot preempt state law.

### B. The Government seeks to use Section 1623 as an unconstitutional commandeering.

Finally, even assuming that Congress as a general matter could regulate post-secondary education benefits through its authority over immigration, the Government's theories suggest § 1623 seeks to punish States that choose not to distinguish between noncitizen and citizen residents in higher education tuition and financial aid. The Court should reject that interpretation, which would "run[ ] directly afoul of the Tenth Amendment and the anticommandeering rule." *California*, 921 F.3d at 888.

Congress "lacks the power" to dictate "what a state legislature may and may not do," as it attempts through § 1623 here. *See Murphy*, 584 U.S. at 472-74. Under this anticommandeering doctrine, "Congress cannot issue direct orders to state legislatures," either by requiring an "action" or by "imposing a prohibition." *Id.* at 475. A valid preemption provision must "regulate[ ] private actors," not States alone. *Id.* at 477.

Yet § 1623 regulates only States by constraining their determination of *eligibility* for residence-based postsecondary education benefits. As the Government itself asserts, the statute "is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens." Compl. ¶ 4 (quoting *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 ¶ 20 (Ariz. Ct. App. Nov. 7, 2019)). Section 1623 does not limit what unlawfully present noncitizens can do, and it does not grant a benefit to citizens. *See Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 312 (5th Cir. 2023) (recognizing that § 1623 does not "impose a duty on *illegal aliens* to not be eligible for benefits if citizens are not"); *Foss*, 2019 WL

5801690, at *3 ("Section 1623 never mentions, much less creates and confers, any enforceable private right for individual, non-resident students.").

As the Government construes it, § 1623 gives States an unconstitutional choice that fails both parts of the *Murphy* test—it directs "States either to enact" a law that gives all citizens eligibility for a postsecondary education benefit "or to refrain from enacting" a law that makes noncitizens not lawfully present eligible for benefits on the basis of residence. 584 U.S. at 477. Rather than "directly regulating" the ability of noncitizens not lawfully present to attain residence-based benefits, the Government impermissibly forces the States to do its work. *New York v. United States*, 504 U.S. 144, 160 (1992).[5]

The Government further exposes its commandeering problems by apparently challenging Arizona's repeal of its former laws through Prop. 308, which is exactly what *Murphy* prohibits. As the Complaint notes, "Prop. 308 repealed a prior statute that made illegal aliens ineligible for state-funded financial aid benefits." Compl. ¶ 2. Those arguments are tantamount to seeking an "order" for Arizona to "retain [its] laws," *Murphy*, 584 U.S. at 475. Beyond seeking to undo the People's constitutionally protected decisions, *see* Ariz. Const. art. IV, pt. 1, § 1(6), it is unclear this Court could issue such an order.

"Whether one views [§ 1623] as lying outside Congress' enumerated powers, or as infringing upon the core of state sovereignty reserved by the Tenth Amendment, the provision is inconsistent with the federal structure of our Government established by the Constitution." *New York*, 505 U.S. at 177. Section 1623 cannot lawfully command the State to enact the Government's preferred rule of equal treatment and State residency.

## CONCLUSION

The Court should dismiss the Complaint in full.

---

[5] Recent cases addressing § 1623's anticommandeering problems are unpersuasive because they did not explain how the statute is best read to regulate private actors. *See, e.g.*, *Texas*, 181 F.4th at 559-60; *Illinois*, 2026 WL 2137256, at *7.

RESPECTFULLY SUBMITTED this 30th day of October, 2026.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By *<u>/s/ Hayleigh S. Crawford</u>*

Joshua D. Bendor
Hayleigh S. Crawford
Nathan T. Arrowsmith
Joshua G. Nomkin
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004-1592
Telephone: (602) 542-3333

*Attorneys for Defendants State of Arizona and Arizona Board of Regents*

**LRCiv. 12.1(c) Certification**

Undersigned counsel conferred with counsel for Plaintiff via video meeting on October 27, 2026, and notified Plaintiff's counsel of the issues asserted in this Motion. The parties were unable to agree that the Complaint was curable through amendment.