Jonathan D. Guynn
Acting Assistant Attorney General
Civil Division

Cody M. Poplin
Deputy Assistant Attorney General

Hilary K. Perkins
Director

Jacqueline Colemand Snead
Deputy Director

Garrett Greene
Senior Litigation Counsel (TX Bar No. 24096217)
Civil Division, U.S. Department of Justice
450 Fifth Street, N.W., Ste. 6400 South
Washington, D.C. 20001
(202) 549-9429
garrett.greene@usdoj.gov

*Attorneys for Plaintiff United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF ARIZONA; ARIZONA BOARD OF REGENTS,<br><br>Defendants. | Civil No. 2:26-cv-06101-GMS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>(Hon. G. Murray Snow) |

## INTRODUCTION

Congress has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). In 1996, it used that power to prohibit states from incentivizing illegal stays in this country through the provision of public benefits. "Notwithstanding any other provision of law," an alien "not lawfully

present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless" a citizen is eligible for that benefit "without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). For years, Arizona law said the same thing. Ariz. Rev. Stat. Ann. § 15-1803(B) (repealed 2022). Then, in 2022, Proposition 308 repealed that provision and declared that "[p]ersons without lawful immigration status are eligible for in-state tuition." Ariz. Rev. Stat. Ann. § 15-1803(C). Arizona has applied that rule since 2023 and, as it acknowledges, has given the resident rate to hundreds of unlawfully present aliens. Mot. 3, 5 n.2.

Arizona offers three arguments why none of this matters. None works. First, the United States has standing. A State's violation of a federal statute inflicts an "injury to [the United States'] sovereignty," *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000), and the Complaint challenges a program Arizona has run for four years, not a statute's "mere existence." Second, § 15-1803 confers in-state tuition "on the basis of residence." Two years of living in Arizona while attending its schools is a residence requirement under any definition. And Arizona's reading of the "unless" clause, under which one hypothetical nonresident citizen unlocks the benefit for every unlawfully present alien, would nullify the statute. Third, § 1623(a) is a valid exercise of Congress's immigration power. It sets an eligibility rule for private persons and commands nothing of Arizona. *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). The Court should deny Arizona's motion.

## BACKGROUND

Congress has barred unlawfully present aliens from most state benefits, "postsecondary education" among them, unless a State restores eligibility "through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(a), (c)(1)(B), (d). One month later, in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress removed one benefit from the States' discretion. Section 1623(a) applies "[n]otwithstanding any other provision of law." For sixteen years, Arizona law tracked § 1623(a). Former § 15-1803(B) provided that "[i]n accordance with" IIRIRA, a person "without lawful immigration status is not entitled to classification as an in-state student." Ariz. Rev. Stat. Ann. § 15-1803(B) (repealed 2022). Proposition 308 repealed that provision, along with former § 15-1825's bar on state-subsidized financial aid. Mot. 3. Amended § 15-1803(B) now makes "eligible for in-state tuition" any student who attended high school "while physically present in this state for at least two years" and graduated "while physically present in this state." Ariz. Rev. Stat. Ann. § 15-1803(B). Subsection (C) thus provides "Persons without lawful immigration status are eligible for in-state tuition." Attendance at an Arizona public school, in turn, requires "verifiable documentation of residency in this state." *Id.* § 15-802(B)(1); Compl. ¶ 35. The United States pleaded two Supremacy Clause counts: Count I challenges in-state tuition, and Count II challenges state financial aid. Compl. ¶¶ 47–54. Arizona moved to dismiss under Rules 12(b)(1) and 12(b)(6). ECF No. 11 ("Mot.").

## LEGAL STANDARD

Because Arizona mounts facial challenges under Rules 12(b)(1) and 12(b)(6), the Court accepts the Complaint's well-pleaded facts and draws reasonable inferences for the United States. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[G]eneral factual allegations of injury" suffice at this stage, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and—for standing purposes, the Court "accept[s] as valid the merits of [the United States'] legal claims," *FEC v. Cruz*, 596 U.S. 289, 298 (2022).

## ARGUMENT

### I. The United States Has Standing Because Arizona Confers a Benefit Federal Law Forbids

Arizona's theory is that the United States suffers no injury when a State overrides a federal immigration statute unless the override also obstructs arrests, removals, or other federal operations. Mot. 4–7. No court of appeals has adopted that premise, and the Eighth Circuit has rejected it outright. *See United States v. Missouri*, 114 F.4th 980, 984–85 (8th Cir. 2024).

#### A. A state's nullification of a federal statute injures the United States' sovereignty

"It is beyond doubt" that a complaint alleging an "injury to [the United States'] sovereignty arising from violation of its laws" "asserts an injury to the United States." *Vermont Agency*, 529 U.S. at 771. That is the injury here. A sovereign's core interests include "the power to create and enforce a legal code," *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982), and a State that administers a program negating a federal statute within its borders nullifies that code. Courts thus hold that "the

United States' sovereign interests are harmed when its laws are violated," *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022). The Ninth Circuit applies the same principle to States: a federal measure that intrudes on a State's authority over its own policy inflicts a "sovereign injury" sufficient for Article III. *Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022). And it applies with special force in immigration, since it is "a domain of federal authority." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012).

Nor does the United States need a statutory cause of action to "assert[] its sovereig[n] power." *Sanitary Dist. of Chicago v. United States*, 266 U.S. 405, 425 (1925); *see also id.* at 426. Arizona's reliance on *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), is misplaced. Mot. 6. *Armstrong* addressed private parties' implied right of action, and it left intact the "equitable tradition of suits to enjoin unconstitutional actions by state actors," under which "the United States has sued in other cases to enjoin a state law's implementation and enforcement." *Missouri*, 114 F.4th at 986.

### B. The Complaint challenges four years of implementation, not a statute's "mere existence"

Arizona's principal argument recasts the Complaint as an attack on the "mere existence" of § 15-1803. Mot. 6. But that is wrong. Rather, the Complaint alleges that Arizona has implemented Proposition 308 since 2023; that hundreds of unlawfully present aliens have received in-state tuition; and that community college districts award state-funded scholarships under the statute. Compl. ¶¶ 37–46. Arizona admits it "has applied and enforced Prop. 308" for four years. Mot. 3.[1] An injunction would stop Arizona's conduct—

[1] Arizona's quarrel with the Complaint's tuition-subsidy figures, Mot. 5 n.2, is irrelevant. Regardless whether 720 unlawfully present aliens received in-state tuition in one

classifying unlawfully present aliens as eligible, charging them the in-state rate, and awarding them state-funded scholarships. Arizona's reliance on two district-court decisions is misplaced. Mot. 6 (citing *United States v. California* and *United States v. City of Boston*). *United States v. California*, 824 F. Supp. 3d 1079, 1083 (C.D. Cal. 2026), a non-final order granting leave to amend, rejected standing premised on the "mere existence" of an allegedly preempted egg-labeling law. But the Complaint here pleads implementation. And to the extent *California* would deny standing even when a State displaces a federal rule, it cannot be squared with the Supreme Court and Ninth Circuit caselaw binding on this Court. *See* Section I(A), *supra*. *United States v. City of Boston*, 833 F. Supp. 3d 30 (D. Mass. 2026), appeal docketed, No. 26-1852 (1st Cir.), rejected what it called an "essentially limitless view of sovereign injury" under which "any official statement opposing federal policies" would suffice, *id.* at 45 and found no redressability because state law independently barred the detainer holds at issue, *id.* at 42. Arizona identifies no comparable bar here. This District, meanwhile, recently held that the United States and the CFTC had "standing to sue to enjoin enforcement of preempted state laws." *KalshiEX LLC v. Johnson*, 830 F. Supp. 3d 907, 910 (D. Ariz. 2026).

### C. The Complaint alleges interference with immigration enforcement

Arizona faults the Complaint for not alleging that § 15-1803 "interferes with immigration enforcement." Mot. 6. But the Complaint's allegations show just that, and the

---

semester or over several, Arizona has conferred on hundreds of them a benefit § 1623(a) says they "shall not be eligible" to receive. Compl. ¶ 37. Nor does the Complaint claim lost tuition revenue as the United States' injury, *see* Mot. 5–6. Rather, those figures measure the scale of the benefit conferred in defiance of the statute Congress passed.

United States receives every reasonable inference from them. Compl. ¶¶ 1–5, 16–24, 32–46; *Leite*, 749 F.3d at 1121. Besides, § 1623(a) *is* an immigration law. Congress's power reaches the status and treatment of aliens, not just their entry and removal, *Arizona*, 567 U.S. at 394–95, and Congress enacted § 1623(a) "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6). A State that hands unlawfully present aliens the very benefit Congress withheld clearly "interferes with immigration enforcement." Mot. 6. Arizona's reliance on *GEO Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc), and *United States v. King County*, 122 F.4th 740 (9th Cir. 2024), is misplaced. Mot. 6. Those decisions found standing where state measures disrupted federal operations, but neither held that operational disruption is the *only* sovereign injury. Both were obstacle-preemption and intergovernmental-immunity cases. Here, Congress itself expressly declared the state policy incompatible with federal law.

Arizona's remaining objections fail. That "the word 'injury' does not appear in the Complaint," Mot. 4, proves nothing because Rule 8 requires notice of the claim, not magic words. The Complaint identifies the federal statute, the state program that displaces it, the class of beneficiaries, and the scale of the benefit. Compl. ¶¶ 1–5, 16–24, 32–46. The injury is traceable to Defendants, *id.* ¶¶ 11, 26, and an injunction would redress it. *Lujan*, 504 U.S. at 560–61. And Arizona's refrain, "No concrete harm, no standing," Mot. 4 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)), comes from a case about private plaintiffs. *TransUnion* held that class members seeking damages could not rest standing on a bare statutory violation; it did not address a sovereign's standing. The United States sues as a sovereign to vindicate its own law. That is concrete harm.

## II. Section 15-1803 Confers a Benefit "on the Basis of Residence" That § 1623(a) Prohibits

Express preemption turns on "the plain wording of the clause." *Chamber of Commerce v. Whiting*, 563 U.S. 582, 594 (2011) (citation omitted). Arizona does not dispute that in-state tuition is a postsecondary education benefit. Mot. 7–13. *See Texas*, 181 F.4th at 557 ("Discounted in-state tuition is prototypical monetary assistance that qualifies as a postsecondary educational benefit within the meaning of § 1623(a)."). Rather, Arizona disputes the residential basis and invokes the "unless" clause of the statute. Mot. 7–13.

### A. Section 15-1803 confers in-state tuition "on the basis of residence within a state"

Arizona wrongly argues that § 1623(a) does not apply because § 15-1803 speaks of physical presence rather than "residence." Mot. 7–11. That defense rests on a label. Mot. 7–11. Section 15-1803's text, Arizona's own definition of "residence," and the case law, however, say otherwise. As to text, Section 15-1803 provides that "[p]ersons without lawful immigration status are eligible for in-state tuition." Ariz. Rev. Stat. Ann. § 15-1803(C). In-state tuition is the rate Arizona charges its residents and denies to residents of other States. Compl. ¶¶ 27–31. And § 15-1803 extends that rate to unlawfully present aliens who attended high school for two years and graduated "while physically present in this state." Ariz. Rev. Stat. Ann. § 15-1803(B). A statute that makes such aliens eligible for the resident rate because they lived and went to school in the State makes them eligible on the basis of residence. For sixteen years, Arizona's own code said as much, denying them "classification as an in-state student" "[i]n accordance with" IIRIRA. Ariz. Rev. Stat. Ann. § 15-1803(B) (repealed 2022). Nothing in federal law changed when Proposition 308 repealed that

provision. Rather, Arizona simply relabeled the qualifying connection. The point is substantive, not semantic. If a State defines a universe of students who are deemed to have sufficient connections to the State to be treated as residents for purposes of in-state tuition, those students are provided a benefit "on the basis of residence." 8 U.S.C. § 1623(a).

Next, Arizona's own definition of "residence" undermines its position. Arizona says "residence" means a person's "principal, actual dwelling place in fact, without regard to intent." Mot. 7 (quoting 8 U.S.C. § 1101(a)(33)). Two years of physical presence in a State while attending school there describes where a person lives: an "actual dwelling place in fact." And attendance at an Arizona public school requires "verifiable documentation of residency in this state." Ariz. Rev. Stat. Ann. § 15-802(B)(1); Compl. ¶ 35. That is not a proxy for residence. It is residence. Even if it were only a proxy, § 1623(a) would still apply. The statute bars eligibility "on the basis of residence," not eligibility conferred by statutes that happen to use the term "residence." The Fifth Circuit described Texas's high-school-graduation criterion as "a proxy for residence," *Texas*, 181 F.4th at 560, and the Ninth Circuit treats a proxy that closely tracks a characteristic as a classification on the basis of that characteristic. *See Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013) (citing cases treating discrimination based on "seemingly neutral criteria" closely associated with a group, such as gray hair and age, as facial discrimination against that group). On Arizona's reading, any State could keep its residential gateway, relabel it "attendance while physically present," and confer the very benefit Congress withheld. But "[w]e should not lightly conclude that Congress enacted a self-defeating statute." *Quarles v. United States*, 587 U.S. 645, 654 (2019).

Arizona's but-for argument fares no better. Mot. 7. *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 350 (2013), and *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019), do not concern residence. They explain that phrases like "because of" and "on the basis of" require but-for causation: the outcome would not have occurred without the specified factor. That standard does not require residence to be the *sole* condition of eligibility. "Often, events have multiple but-for causes." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020). A student needs both the schooling and the Arizona presence to receive the tuition discount, so residence is *a* but-for cause. Arizona's hypotheticals prove the point. Mot. 9–10. The boarding-school student lives in Arizona while she attends. *Id*. at 9. And Arizona's reliance on a statute assigning an unemancipated student her parent's domicile, Ariz. Rev. Stat. Ann. § 15-1802(C), does not change her "actual dwelling place in fact," which is what Arizona's own definition asks. *Id*.; Mot. 7. The graduate who later moves away receives the discount on the strength of earlier residence, and § 1623(a) does not require that the qualifying residence be current. That leaves Arizona's hypothetical student who lives in another State and commutes to an Arizona high school. Mot. 9. But a handful of nonresident commuters would not show that the benefit lacks a residential basis for the unlawfully present aliens who receive it because they lived in Arizona while attending its schools.

Arizona's authorities are nonbinding and wrong. Mot. 8–9. *Martinez v. Regents of the University of California*, 241 P.3d 855 (Cal. 2010), construed a California statute, and a state court's reading of its own law does not bind this Court on § 1623(a). *United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026), appeal docketed, No. 26-1886 (8th Cir.), and

*United States v. Virginia*, 2026 WL 2984988 (E.D. Va. Oct. 5, 2026), make the same error. Both decisions reason that any exception defeats preemption, which confuses residence as *one* basis for a benefit with residence as the *sole* basis. The question is whether eligibility rests on residence, and Arizona's physical-presence requirement answers it. Indeed, the Fifth Circuit held that § 1623(a) preempts Texas's analogous statute, rejecting as futile every defense the would-be intervenors raised, the same defenses Arizona raises here. *Texas*, 181 F.4th at 557–60. And several district courts agree. *See United States v. Illinois*, No. 3:25-cv-01691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026); *United States v. Nebraska*, 835 F. Supp. 3d 962 (D. Neb. 2026); *United States v. Kansas*, No. 5:26-cv-4066, 2026 WL 2654069, at *5 (D. Kan. Sept. 9, 2026). Arizona dismisses the Texas, Kansas, Nebraska, and Oklahoma judgments "collusive," Mot. 11 n.3, and has no response to *Illinois*, which granted summary judgment after full adversarial briefing. Arizona also unsuccessfully tries to distinguish those cases because their statutes paired graduation with residence-related requirements, Mot. 10–11, but so does Arizona's. *Illinois* held that attendance "together with residence-related requirements (such as . . . residing in the state while attending high school)" confers a benefit "on the basis of residence." 2026 WL 2137256, at *9–10. So does Arizona's requirement of attendance "while physically present in this state." Ariz. Rev. Stat. Ann. § 15-1803(B). Thus, § 15-1803 confers in-state tuition "on the basis of residence within a State." 8 U.S.C. § 1623(a).

**B. A few nonresident citizens do not satisfy the "unless" clause**

Arizona's fallback fixes on the article "a." Because § 1623(a) excepts cases in which "*a* citizen or national" is eligible without regard to residence, Arizona argues, one

nonresident citizen who qualifies satisfies the clause for every unlawfully present alien. Mot. 11–13. The text forecloses that reading. Section 1623(a) bars "an alien" from a benefit "unless a citizen or national" is eligible for "such a benefit (in no less an amount, duration, and scope)" without regard to residence. Those words call for a comparison between the resident alien and the nonresident citizen: is a citizen who does not reside in the State eligible for the same benefit, in the same amount, duration, and scope?

Section 1623(a) "is a categorical prohibition, whose reference to 'a citizen or national' naturally reads to include the plural, and contains no capacious escape hatch allowing a state to satisfy the 'unless' condition by identifying a single U.S. citizen or national somewhere who can obtain the benefit vis-à-vis a limited exception." *Texas*, 181 F.4th at 558. In short, "U.S. citizens or nationals must be treated no worse than illegal aliens." *Id.* at 559; *accord Illinois*, 2026 WL 2137256, at *11; *Kansas*, 2026 WL 2654069, at *5. And *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), that Arizona relies on, interpreted "a" in light of "context." *Id.* at 164. Read in context, the "unless" clause describes a parity condition that must be satisfied *before* states may confer residence-based postsecondary education benefits on illegal aliens: nonresident U.S. citizens or nationals should be treated no worse in terms of tuition rates than illegal aliens, and if nonresident citizens are generally ineligible for reduced in-state tuition rates, then so too are illegal alien residents.

Arizona's exceptions do not change the analysis. A State that exempts a few categories of nonresident citizens has not made citizens eligible "without regard to" residence. Indeed, Arizona has long charged nonresidents more than two and a half times the resident rate. Compl. ¶ 29. A citizen who qualifies because of earlier Arizona residence

receives the benefit *with* regard to residence. And a citizen who qualifies as a servicemember, a tribal member, or an AmeriCorps participant, *see* Mot. 2–3 (citing Ariz. Rev. Stat. Ann. § 15-1802), qualifies because of a status few citizens hold. Those exemptions leave the ordinary nonresident citizen ineligible for the benefit § 15-1803 extends to unlawfully present aliens, so citizens are not eligible for "such a benefit (in no less an amount, duration, and scope)." 8 U.S.C. § 1623(a).

Arizona's reading would also make § 1623(a) self-defeating. If a single servicemember or ROTC cadet satisfied the "unless" clause, § 1623(a) would be "essentially toothless," *Kansas*, 2026 WL 2654069, at *5, in its application. But again, "[c]ongress does not ordinarily enact self-defeating statutes." *Exxon Mobil Corp. v. Corporación CIMEX, S.A.*, 609 U.S. 108, 120 (2026). Arizona protests that the United States' reading is "contrary to common sense" because a State could comply only by charging every citizen the in-state rate. Mot. 12–13 (quoting *Whiting*, 563 U.S. at 597). But that overlooks the choices Congress left the States. A State may keep the resident/nonresident distinction, in which case unlawfully present aliens are ineligible for the resident rate; it may extend the benefit to citizens without regard to residence; or it may award benefits on a basis other than residence, such as merit. What Arizona may not do is keep the distinction for citizens of other States while waiving it for aliens unlawfully present in the State. *See* 8 U.S.C. § 1601(2)(B), (6).[2]

---

[2] Arizona's Motion says nothing specific about Count II, so it has waived any argument on that claim. *Rawls v. Maricopa Cnty.*, 2010 WL 2927309, at *1 (D. Ariz. July 23, 2010) (Snow, J.). In any event, Count II survives for the same reasons. Community college districts award state-funded scholarships to students classified as "Prop 308 eligible or in-state" or "[c]lassified as an Arizona resident." Compl. ¶¶ 40–46. Those are

## III. Congress May Restrict Alien Eligibility Without Commandeering Arizona

A federal provision preempts state law if it "represent[s] the exercise of a power conferred on Congress by the Constitution" and is "best read as one that regulates private actors." *Murphy*, 584 U.S. at 477. Arizona says § 1623(a) fails both tests, Mot. 13–17, but Arizona is wrong. *Texas*, 181 F.4th at 559–60.

### A. Federal immigration authority reaches alien eligibility for educational benefits

Arizona invokes its authority over education. Mot. 13–14 (citing *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954), and *Vlandis v. Kline*, 412 U.S. 441, 452–53 (1973)). But "the Government of the United States has broad undoubted power over the subject of immigration and the status of aliens," *Arizona*, 567 U.S. at 394, including the power to decide which public benefits aliens may receive, *Mathews v. Diaz*, 426 U.S. 67, 79–82 (1976). Section 1623(a) exercises that power for the reasons Congress gave: public benefits should "not constitute an incentive for immigration to the United States," and removing that incentive is a "compelling government interest." 8 U.S.C. § 1601(2)(B), (6). Nor does § 1623(a) regulate education. It regulates aliens. "[N]either the administration nor delivery of 'education' services is curtailed or regulated," and Congress may legislate within its enumerated powers "even when the regulation has incidental effects on state functions." *Illinois*, 2026 WL 2137256, at *8 (citation omitted).

Arizona's other authorities likewise answer questions not presented in this case. *De Canas v. Bica*, 424 U.S. 351, 355 (1976), and *Kansas v. Garcia*, 589 U.S. 191 (2020), held

---

postsecondary education benefits conferred on the same residential basis. Nor does § 1621(d) help Arizona; § 1623(a) applies "[n]otwithstanding any other provision of law."

that particular state laws touching aliens survived preemption: a California ban on knowingly employing unlawfully present aliens in *De Canas* and state identity-theft prosecutions in *Garcia* Mot. 15. But neither addressed Congress's power to enact an express eligibility rule like § 1623(a). *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413–20 (2003), and *Zschernig v. Miller*, 389 U.S. 429, 432–35 (1968), found state laws displaced by the federal foreign-affairs power without an express statute. Neither limits Congress's power to enact one. *Plyler v. Doe*, 457 U.S. 202 (1982), addressed a State's exclusion of children from basic schooling, and its observation that unlawful status does not itself prevent residence, *id.* at 227 n.22, cuts against Arizona: § 1623(a) presupposes that an unlawfully present alien can reside in a State and restricts the benefits that residence may confer. *St. Joseph's Hosp. & Med. Ctr. v. Maricopa County*, 142 Ariz. 94, 100 (1984), which construed Arizona's indigent-care statute, makes the same point. Mot. 15. *City & County of San Francisco v. USCIS*, 981 F.3d 742, 756–58 (9th Cir. 2020), describes the public-charge doctrine, not the outer limit of the immigration power. And Arizona's "public water fountain," Mot. 16, hypothetical, is beside the point. Section 1623(a) is confined by its terms to residence-based postsecondary education benefits.

Arizona's own brief concedes the point. It invokes § 1621(d) as the authority for Proposition 308, Mot. 2. Yet §§ 1621 and 1623 rest on the same footing: both regulate unlawfully present aliens' eligibility for state benefits. Arizona cannot embrace Congress's power to set the default rule of ineligibility while denying its power to make part of that rule non-waivable.

### B. Section 1623(a) regulates private actors and does not command Arizona to legislate

Arizona's anticommandeering argument misreads *Murphy* and the relief the Complaint seeks. Mot. 16–17. *Murphy* struck down a statute that barred States from "authoriz[ing] by law" sports gambling, a provision that "unequivocally dictates what a state legislature may and may not do," unaccompanied by any federal rule governing private conduct. 584 U.S. at 474. Valid preemption looks different: "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence." *Id.* at 477. Section 1623(a) fits that description exactly. Its subject is "an alien who is not lawfully present," and its command is that the alien "shall not be eligible" for the benefit. Arizona law "confers rights . . . that conflict," 584 U.S. at 474: such persons "are eligible for in-state tuition." Ariz. Rev. Stat. Ann. § 15-1803(C). So the federal rule takes precedence. Arizona's own authorities agree. *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304, 312–13 (5th Cir. 2023), explained that § 1623(a) denies permission rather than imposing an affirmative duty: "No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible." *Id.* at 313. *Foss v. Arizona Board of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) (mem. decision), asked whether § 1623 creates a private right of action, a question about remedies, not about Congress's power. And *New York v. United States*, 505 U.S. 144, 175–76 (1992), and *United States v. California*, 921 F.3d 865, 888–90 (9th Cir. 2019), concern compelled state regulation or assistance. Section 1623(a) requires Arizona to enact nothing, retain nothing, and administer no federal program.

Instead, it operates on the beneficiary whatever the legislature does. Displacing a conflicting state law is not commandeering. *Arizona v. United States* held three provisions of state law preempted by federal immigration law, and nothing in that decision suggests that preemption commandeered the State. 567 U.S. at 416. Nor does the United States seek an order directing Arizona's legislature or voters to do anything. Arizona suggests the Complaint attacks the "repeal" of former law and so seeks an order that Arizona "retain" its statutes. Mot. 17 (quoting *Murphy*, 584 U.S. at 475). It does not. The Complaint seeks a declaration that § 15-1803 is preempted as applied to unlawfully present aliens and an injunction against its enforcement. Compl. ¶¶ 55–56. Arizona remains free to abolish the resident/nonresident distinction, keep it, or extend the resident rate to any category of citizens it chooses. The only constraint is a federal eligibility rule that operates on the alien. And because that rule reaches "any postsecondary education benefit," public or private, it does not single out States. *See Haaland*, 599 U.S. at 283–84 (evenhanded regulation of state and private actors does not "typically implicate the Tenth Amendment"). Constitutional avoidance offers no refuge either: it "is a tool for choosing between competing plausible interpretations of a statutory text," *Clark v. Martinez*, 543 U.S. 371, 381 (2005), and Arizona's reading is not a "plausible" interpretation of § 1623(a) but a nullification of it.

**CONCLUSION**

The Court should deny the motion to dismiss.

DATED this 13th day of November, 2026.

Respectfully submitted,

Jonathan D. Guynn
Acting Assistant Attorney General

Civil Division

Cody M. Poplin
Deputy Assistant Attorney General

Hilary K. Perkins
Director

Jacqueline Colemand Snead
Deputy Director

/s/ Garrett Greene
Senior Litigation Counsel (TX Bar No. 24096217)
Civil Division, U.S. Department of Justice
450 Fifth Street, N.W., Ste. 6400 South
Washington, D.C. 20001
(202) 549-9429
garrett.greene@usdoj.gov

*Attorneys for the United States of America*